# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| William Lamonte Bodney, | No. CV 06-0015-TUC-CKJ |
| Plaintiff, | **ORDER** |
| vs. | |
| Pima County Sheriff's Department, et al., | |
| Defendants. | |

Plaintiff William Lamonte Bodney brought this civil rights action under 42 U.S.C. § 1983 against Pima County Sheriff's Office employees Barber, Smead, Sergeant Mattas. (Doc. #20.) Defendants move for summary judgment.[1] (Doc. #92.) The motion is fully briefed. (Doc. ##97, 98.)

The Court will grant the motion in part and deny it in part.

**I.  Background Facts**

Plaintiff alleged three grounds for relief in his Second Amended Complaint. (Doc. #20.) He claimed in Count I that on July 15, 2005, while at the Pima County Adult Detention Center, Defendants Barber, Mattas, and Smead used excessive force on Plaintiff causing extensive eye damage and other injuries. The Court directed Barber, Mattas, and Smead to answer Count I and dismissed the remaining claims and Defendants. (Doc. #29.)

---

[1] The Court sent the Notice required under Rand v. Rowland, 154 F.3d 952, 962 (9th Cir. 1998), advising Plaintiff of his obligation to respond. (Doc. #94.)

Defendants move for summary judgment on the grounds that (1) there is no genuine issue of material fact which would permit a jury to find Defendants liable because they used reasonable force to control a volatile situation and (2) they are entitled to qualified immunity. (Doc. #92.)

**II.    Legal Standards**

    **A.    Summary Judgment**

A court must grant summary judgment "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); see also Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986). Under summary judgment practice, the moving party bears the initial responsibility of presenting the basis for its motion and identifying those portions of the record, together with affidavits, that it believes demonstrate the absence of a genuine issue of material fact. Celotex, 477 U.S. at 323; Devereaux v. Abbey, 263 F.3d 1070, 1076 (9th Cir. 2001) (*en banc*).

If the moving party meets its burden with a properly supported motion, the burden then shifts to the opposing party to present specific facts that show there is a genuine issue for trial. Fed. R. Civ. P. 56(e); Auvil v. CBS "60 Minutes", 67 F.3d 816, 819 (9th Cir. 1995); see Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). Conclusory allegations, unsupported by factual material, are insufficient to defeat a motion for summary judgment. Taylor v. List, 880 F.2d 1040, 1045 (9th Cir. 1989). Instead, the opposing party must, by affidavit or as otherwise provided by Rule 56, designate specific facts that show there is a genuine issue for trial. Anderson, 477 U.S. at 249; Devereaux, 263 F.3d at 1076.

In assessing whether a party has met its burden, the court views the evidence in the light most favorable to the non-moving party. Allen v. City of Los Angeles, 66 F.3d 1052, 1056 (9th Cir. 1995). The affidavits presented by the parties must "set forth such facts as would be admissible in evidence." Fed. R. Civ. P. 56(e).

**B.     Excessive Force**

The Fourth Amendment establishes the constitutional parameters for claims of excessive force during pretrial detention. Lolli v. County of Orange, 351 F.3d 410, 415 (9th Cir. 2003) (citing Gibson v. County of Washoe, 290 F.3d 1175, 1197 (9th Cir. 2002). The Fourth Amendment does not prohibit the use of reasonable force. Tatum v. City and County of San Francisco, 441 F.3d 1090, 1095 (9th Cir. 2006). Whether the force was excessive depends on "whether the officers' actions [were] 'objectively reasonable' in light of the facts and circumstances confronting them, without regard to their underlying intent or motivation." Graham v. Connor, 490 U.S. 386, 397 (1989). See also Tatum, 441 F.3d at 1095; Lolli, 351 F.3d at 415. The Court must balance the nature and quality of the intrusion against the countervailing governmental interests. Graham, 490 U.S. at 396. Moreover,

> [t]he "reasonableness" of a particular use of force must be judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight. . . . . "Not every push or shove, even if it may later seem unnecessary in the peace of a judge's chambers," violates the Fourth Amendment. The calculus of reasonableness must embody allowance for the fact that police officers are often forced to make split-second judgments—in circumstances that are tense, uncertain, and rapidly evolving—about the amount of force that is necessary in a particular situation.

Id. at 396-97 (citation omitted). In determining whether an officer acted reasonably under the Fourth Amendment, the Court considers the "severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest." Id. at 396.

**III.    Motion for Summary Judgment**

    **A.     Parties' Contentions**

        **1.     Defendants**

In support of their motion, Defendants submit their Statement of Facts (Doc. #93 (DSOF)); the affidavit of Barber and his Pima County Sheriff's Department Corrections Bureau Incident Report (Incident Report) (id., Exs. A-B, Barber Aff. and Incident Report); the affidavit of Smead and his Incident Report (id., Exs. C-D, Smead Aff. and Incident Report); the affidavit of Mattas, her Incident Report, and an Inmate Restraints Check Form

1 (id., Exs. E-G, Mattas Aff., Incident Report, and Restraints Check); Plaintiff's Second Amended Complaint (Ex. H); and excerpts from Plaintiff's deposition (id., Ex. I, Pl. Dep. March 13, 2007).

Defendants assert that on July 13, 2005, at approximately 2:15 AM, Plaintiff, who was a pretrial detainee at the Pima County Adult Detention Center, became agitated when Barber provided Plaintiff with an orange jail uniform. (DSOF ¶¶ 1-2.) According to Defendants, Plaintiff refused to wear the shirt because he thought it was the wrong size, and when Barber told Plaintiff that he had been provided with the correct size shirt and that he would not be receiving another shirt, Plaintiff became angry and began yelling profanities at Barber. (Id. ¶¶ 4-5, Barber Aff. ¶¶ 7-9.) Barber attests that he then directed Plaintiff into a holding cell in the Identification Unit (ID) and informed Plaintiff that he would remain in the cell until he was ready to get dressed. (DSOF ¶ 6, Barber Aff. ¶ 10.)

Defendants assert that as Barber was escorting Plaintiff to ID, Plaintiff cursed at Barber, threw the shirt at the wall, and called Barber a "fucking asshole." (DSOF ¶ 7, Barber Aff. ¶¶ 10-12.) According to Defendants, as Plaintiff and Barber entered ID, Plaintiff stopped at the doorway, faced Barber, and started yelling at him. (Barber Aff. ¶ 13.) They assert that Plaintiff tried to stare down Barber. (DSOF ¶ 8.) Although Barber told Plaintiff to continue walking, Plaintiff took one step forward and then turned around, faced Barber, and stepped toward him in an aggressive manner. (Barber Aff. ¶¶ 14-15.) Barber attests that he pushed Plaintiff into the wall and, as he did so, Plaintiff threw a punch at Barber. (Id. ¶¶ 16-17.) Defendants assert that Barber attempted to take Plaintiff to the floor, and Plaintiff wrapped his arms around Barber's shoulder and neck and attempted to pull him to the ground. (Id. ¶ 18.) According to Defendants, while on the floor, Plaintiff continued to throw punches and Barber was unable to pull away. (Id. ¶ 12.)

Defendants assert that Smead and Mattas witnessed or heard the altercation and ran to assist Barber. (DSOF ¶ 13, Smead Aff. ¶¶ 6-10, Mattas Aff. ¶¶ 6-8.) Smead arrived first and grabbed Plaintiff's left arm, trying to prevent Plaintiff from punching Barber. (Smead Aff. ¶ 12.) Defendants contend that Plaintiff continued to fight with both Barber and Smead

- 4 -

and that Barber delivered a few knee strikes to Plaintiff's upper body in an attempt to subdue Plaintiff and prevent him from striking jail staff. (DSOF ¶¶ 14-15.) Defendants assert that Plaintiff was able to stand and that Barber and Smead took him back to the ground. (Id. ¶ 16.)

Defendants further contend that Mattas arrived at this time and ordered Plaintiff to stop resisting; she then used her X26 taser, attempting to tase Plaintiff in the leg. (Id. ¶ 17-18.) According to Defendants, Plaintiff continued to struggle with the officers; the taser lost contact with Plaintiff's leg, but Mattas had tased him. (Mattas Aff. ¶ 8-10.) Barber then struck Plaintiff twice with closed fists. (DSOF ¶ 20.) Defendants assert that Mattas tried to tase Plaintiff a second time but was unable to. (Mattas ¶ 11.) They further assert that Plaintiff suddenly stopped resisting and said he was done fighting but that he continued to be non-compliant. (DSOF ¶¶ 22-23.) Defendants contend that they were eventually able to get Plaintiff handcuffed and that he was secured in a restraint chair, where he continued yelling. (Id. ¶ 23-24.)

Defendants assert that they noticed that Plaintiff had a cut above his eye; a nurse arrived to clean the cut and to check Plaintiff's restraints and pulse. (Id. ¶ 25.) The nurse noted no edema. (Id. ¶ 25.) According to Defendants, Plaintiff did not mention having a seizure. (Id. ¶ 26.) Plaintiff was removed from the restraint chair at 4:17 AM. (Id. ¶ 27.)

### 2. Plaintiff

Plaintiff submits a "Motion: Requesting the Court to Deny State's Request for Summary Judgment," containing a Statement of Facts (Doc. #97 (PSOF)), and his Statement of Facts, which contains his argument (id.).[2] He also submits many of Defendants' exhibits, a Supervisor's Use of Force Report, a partial report Internal Affairs Case #05-053; a Memorandum from the Pima County Sheriff's Department, dated November 15, 2005; an Incident Report from A. Gonzales; a letter to Plaintiff from the County Attorney; medical

---

[2] The Court will refer to numbered paragraphs in the first part of Doc. #97 as PSOF and will refer to the second part of Doc. #97 as Plaintiff's Memorandum (Memo.) and cite to the docket page numbers 7-19.

- 5 -

information and records, and a CD with videos from the jail.

Plaintiff concedes that he had a disagreement with Barber over the size of the jail house shirt; he claims that he stated "whatever, it's just a shirt" and that as he was being escorted to the pit he said "this is fucking stupid." (Doc. #97 ¶¶ 3-6.) But Plaintiff disputes most of the remaining facts. Specifically, Plaintiff alleges that Barber ordered Plaintiff to stop in the hallway so that Barber could make sure the hallway was clear. (Id. ¶ 7.) Plaintiff asserts that he did not stare down Barber, did not clench his fists, and did not turn aggressively towards Barber. (Id. ¶¶ 8-9.) Plaintiff also asserts that when he stepped through the door, Barber pushed him into the corner. (Id. ¶ 10.) Plaintiff denies that he swung at Barber with his right hand or that he grabbed him around the neck and shoulder or that he fought with Barber. (Id. ¶¶ 11-12, 14.) He asserts that Barber hit him with fists and knee strikes. (Id. ¶¶ 13, 15.)

Plaintiff refers the Court to the jail video of the incident, which Plaintiff alleges shows that Plaintiff was pushed into a "blind spot" and attacked with no provocation. He asserts that there is no evidence of the "phantom punch" alleged by Barber and no evidence "that could be construed as 'aggressive' by an intelligent and reasonable person." (Memo. at 2.) He also argues that Barber's and Smead's stories are inconsistent because Barber says that Plaintiff hit him with the right and Smead stated that it was the left. (Id. at 3, ref. Doc. #93 and Ex. D.) Plaintiff also argues that he could not have wrapped his arms around Barber and, at the same time and while on the floor, thrown punches. (Id.) Plaintiff contends that Barber is 6' 1"" and 200 pounds while Plaintiff is 5' 7" and 140 pounds. (Id. at 3-4.) He also disputes that Smead and Mattas witnessed the incident, arguing that they only claimed to have heard it. He claims that the Internal Affairs report states that Plaintiff was in the corner and Barber was giving knee strikes; he argues this is inconsistent with Barber's claim that he was on the floor and unable to pull away. (Id. at 5.)

Plaintiff further asserts that when Smead arrived, Smead held Plaintiff's left arm while Barber continued to punch him. (Id. ¶ 16.) Plaintiff also claims that he lost consciousness and had an epileptic seizure. (Id. ¶ 17.) He contends that he did not continue to fight with

officers and that he was on his stomach being tased in the back by Mattas as Smead and Barber held him down. (Id. ¶ 20.) Plaintiff asserts that Mattas gave no warning before she tased him. (Memo. at 6.) He argues that when a person is tased he "scream[s], shake[s], or fall[s] down" but he does not fight. (Id. at 8.) He asserts that Mattas took photographs of the injuries, which included a swollen face, lacerations to the left eye, a fractured nose, and taser burns on his left arm, lip, back, and left leg. (Id. ¶ 25.) He also claims that he has blurry vision from orbital and ocular trauma.

He asks the Court to note that photographs were taken but that they have not been produced. (Memo. at 9.) He also states that he has attempted to obtain videos of the incident but that Defendants' attorney claims never to have seen a video. (Id. at 9-10.) He also claims that it is untrue that due to the location of the jail cameras, the incident was not clearly taped. (Id. at 10-1.)

### 3. Reply

With their reply, Defendants submit a Statement of Facts in Reply (Doc. #99 (DSOFR)); a letter from Plaintiff, dated Sept. 12, 2005 (id., Ex. J); a disciplinary report dated Sept. 19, 2005 (id., Ex. K); a Nursing Assessment Protocol (id., Ex. L); additional excerpts from Plaintiff's deposition (id., Exs. M, O, P); and Taser documentation (id., Ex. N).

In their reply, Defendants assert that Plaintiff does not deny that he quarreled with Barber, that he would not dress out properly, and by inference, he admits that he threw the shirt on the floor. (Doc. #98 at 1.) They argue that Plaintiff "does not say he took the shirt off" and the video shows he was not wearing a shirt when he was in the restraint chair. (Id. at 2.) They also argue that Plaintiff admits that he was going to be placed in a special cell until he decided to cooperate. According to Plaintiff, while being escorted to the cell, he stated "Whatever, it's just a shirt" and "this is fucking stupid" and that as they stopped at the door, Plaintiff turned around facing Barber. (Id.)

Defendants further argue that, at this point, Barber and three other officers describe a combative situation. (Id.) They argue that although Plaintiff also claims that he had a seizure, "one who is having a seizure goes very stiff and defecates or urinates in his clothing

and the seizure exhausts the person which leads to sleepiness." (Id.) They assert that Plaintiff had a seizure approximately two months later, and he urinated in his bed. (DSOFR 33). They assert that none of these symptoms were described by any of the officers or the nurse on duty. (Id. ¶ 34). And they note that in the letter to Detective Smith, Plaintiff indicated that he had a seizure while in the restraint chair, but there is no evidence of that. (Id. ¶ 31.)

Defendants contend that only one camera was operable for video use and that very little, if anything, can be seen as described by Plaintiff. (Doc. #98 at 3.) They assert that the video does show Plaintiff in the restraint chair receiving medical attention.

Defendants argue that although Plaintiff asserts that Mattas never warned him to stop resisting, two officers indicate such warning was given by Mattas, and Plaintiff, in his deposition, indicated that after he had been knocked out and when he came to, Mattas was tasing him saying, "Quit resisting. Quit resisting." (DSOFR ¶ 35; Doc. #93, Ex. I, Pl. Dep. 28:12-15.)

Defendants argue that there are other inconsistencies in Plaintiff's response. They assert that Plaintiff was "drive stunned," which does not require firing of probes or darts but instead requires the taser to come into actual contact with the body; it may leave a red mark, but it would not burn or create a bleeding hole. (Doc. #98 at 3, ref. Doc. #97, Ex. 8, Supervisor's Use of Force Summary.) And contrary to the assertions in his response, in his deposition Plaintiff testified that he was tased only once—on the left arm. (DSOFR ¶ 36, Ex. M, Pl. Dep. 52:22-24.) Mattas indicates in her reports that only one stunning took place; the taser used by Mattas, Model X26, Serial #X00-112856, was downloaded and the sequences noted. Defendants argue that the report shows two five second bursts, which supports Mattas's position. (Doc. #98 at 3-4.) And they argue that the Inmate Restraints Check Form does not show any bleeding from a hole in Plaintiff's left arm and that the video of Plaintiff being examined in the restraint chair by the nurse, does not indicate that Plaintiff received treatment for any bleeding on the left arm. (DSOFR ¶ 34.)

As to the photographs, Defendants concede that they are unavailable and assert that

- 8 -

the whereabouts of the disk containing the photographs is unknown at this time. (Doc. #98 at 4.)

Defendants also argue that Plaintiff has on more than one occasion professed failed memory regarding the events of that evening. They note that in his deposition he testified "I don't know what exactly happened." (DSOFR ¶ 38, Pl. Dep 28:23-24.) They point out that Plaintiff also stated that he "didn't know it was a fight." (DSOFR ¶ 39, Pl. Dep. 29:14-15.) They also assert that Plaintiff wrote "there is a lot I can't remember about that nite." (DSOFR ¶ 40, Pl. letter dated Sept. 12, 2005.)

Defendants argue that it is not surprising that Plaintiff may be confused about events. They note that in his pre-sentence report Plaintiff indicated that while at liberty, he consumed six 24-ounce beers daily and drank a fifth of whiskey two or three times a week, if he did not work the following day. (Doc. #98 at 4.) He admitted that he used a lot of marijuana daily and sniffed cocaine and took Ecstasy and PCP until his arrest. He also ate mushrooms twice weekly until June 2005. (DSOFR ¶ 41). Further, Plaintiff stated he was on a lot of medication and he used cocaine and marijuana the night before his arrest. (Id. ¶ 43). They argue that "[i]t is hard to tell how much of the alcohol and illicit drugs coupled with medication plaintiff may have taken, were in plaintiff's system the night he was arrested and created plaintiff's problems with the corrections officers. But by admission, he must have been under the influence of drugs and/or alcohol combined with medications." (Doc. #98 at 4.)

**B.     Analysis**

The Court will deny the motion as to Barber because there is a genuine dispute of fact as to the initial need for force—and therefore, its reasonableness—and as to the force used by Barber. The Court will grant the motion as to Smead and Mattas.

Defendants argue that Plaintiff was acting aggressively toward Barber—cursing, throwing his shirt, and turning to face Barber to stare him down. Plaintiff admits to the cursing and throwing his shirt against a wall but he disputes that he acted aggressively toward Barber. He asserts that he was shoved without provocation and then hit and kneed.

- 9 -

He denies fighting back and asserts that he lost consciousness. The undisputed evidence shows that Smead and Mattas responded only after the incident between Plaintiff and Barber began.

At the outset, the Court notes that it has reviewed the CD containing video footage of events prior to the altercation and during the time when Plaintiff was in restraints. In Scott v. Harris, 550 U.S. 372, 380 (2007), the Supreme Court held that on summary judgment in an excessive force claim, a court could not rely on the plaintiff's version of events when that version was so utterly discredited by video tape capturing the events that no reasonable jury would believe the plaintiff. In the present case, the Court finds that the video is inconclusive.

The video of the first area shows an inmate, apparently Plaintiff, in the raised area around "the pit"—a large waiting area with seats and several people wearing street clothes. The raised area is separated from the pit by a guard rail, and inmates and guards can be seen moving in, about, and out of the raised area and some people use the stairs to walk in and out of the pit. Plaintiff is standing and then sitting on a small ledge by the guard rail. He is wearing jail clothes, including a shirt, and he is not cuffed or wearing leg shackles; sometimes there is an officer near him and other times the officer cannot be seen. Sometimes the officer appears to be speaking to Plaintiff, who never appears to be agitated.[3] The inmate and the officer then move off-screen. There is only one view of the area from one camera. The other video shows an inmate in a holding cell; he is seated in a chair, with his hands behind him. He appears agitated—his legs never stop moving.

Unlike the tape in Scott, the tape here certainly does not "so utterly discredit" Plaintiff's version of events that no reasonable jury would believe him..

Plaintiff also asserts that there are other camera videos of this incident taken from different angles; he refers to the Pima County Sheriff's Memorandum, which states that the incident was recorded on one camera and that because of the location of the camera, the incident was not clearly taped. (Doc. #97 at 10-11, id., Memorandum.) Plaintiff claims this is false and that "it is well established that all areas of the Pima County Jail reception area

---

[3]There is no sound with either video.

are covered with numerous cameras and 'overlapping' camera angles." (Doc. #97 at 11.) He alleges that the Jail erased the tapes because they would prove his case. (Id.) While "[i]t is 'a generally accepted principle of law' that 'an adverse inference may arise from the fact of missing evidence,'" Singh v. Gonzales, 491 F.3d 1019, 1028 (9th Cir. 2007) (quoting Smith v. United States, 128 F. Supp.2d 1227, 1232 (E.D. Ark. 2000)), Plaintiff does not, in fact, establish that other videos of the incident were ever recorded. His speculation is not sufficient. Therefore, the Court will not draw any adverse inference from allegedly missing videos.[4]

The Court will apply the Graham balancing test to the evidence presented.

### 1. Nature of the Force Applied

First the Court must "assess the quantum of force used to [restrain Plaintiff] by considering 'the type and amount of force inflicted.'" Deorle v. Rutherford, 272 F.3d 1272, 1279 (9th Cir. 2001) (internal citation omitted). Construing the facts in Plaintiff's favor, which the Court must do for the purposes of summary judgment, Barber pushed Plaintiff and then began to punch him and knee him. Plaintiff also alleged that while he was on the ground, Smead held his left arm and Mattas tased him. Although the force applied by Barber and Mattas does not rise to deadly force or ensure serious injury, it is more than insignificant. But the force applied by Smead was *de minimis*.

### 2. Need for Force

"[I]t is the need for force which is at the heart of the Graham factors." Liston v. County of Riverside, 120 F.3d 965, 976 (9th Cir. 1997). The "need for force" analysis looks at the severity of the crime at issue, whether the suspect poses a threat to the safety of the officers, or whether he is resisting. Graham, 490 U.S. at 396. In the context of pretrial detention rather than arrest, the factors mentioned in Graham—whether the suspect is resisting arrest or attempting to flee, for example—will not necessarily be relevant. Gibson, 290 F.3d at 1197 n. 21. But maintaining order and security in a jail setting is a legitimate

---

[4] In addition, the Court need not, at this time, draw any inferences regarding the missing photographs.

governmental interest that may justify the use of force.  See id.

### *a.  Barber*

Plaintiff concedes that he had a disagreement with Barber over the size of the jail shirt; he claims that he stated "whatever, it's just a shirt" and that as he was being escorted to the pit he said "this is fucking stupid." But he alleges that Barber ordered Plaintiff to stop in the hallway so that Barber could make sure the hallway was clear. Defendants assert that Plaintiff admitted turning around to face Barber, but they do not cite to anything in support of that, and the Court is unable to find such an admission. Plaintiff asserts that he did not stare down Barber, did not clench his fists and did not turn aggressively towards Barber. In addition, Plaintiff claims that after Barber pushed him into a corner, Barber hit him and used knee strikes but that Plaintiff did not strike back.

The Court notes that in his deposition, Plaintiff stated "They can say that I clenched my fists. I did that." (Doc. #93, Pl. Dep. 32:23.)  In the Ninth Circuit, the general rule is that a party cannot create an issue of fact by contradicting his prior statements. Kennedy v. Allied Mut. Ins. Co., 952 F.2d 262, 266 (9th Cir. 1991); Radobenko v. Automated Equipment Corp., 520 F.2d 540, 543-44 (9th Cir. 1975) (affirming the grant of summary judgment in an action for breach of fiduciary duty and fraud where the non-moving party claimed in his deposition that he was offered employment, agreed to a leave of absence with pay, and that he quit his job but made completely contradictory statements in his affidavit in opposition to summary judgment). In Kennedy, the court reasoned that Radobenko was concerned with "sham" testimony that flatly contradicted earlier testimony in an effort to create an issue of fact and avoid summary judgment, and, therefore, in order to discount new evidence, a court must make a factual determination that the contradiction was a "sham." Kennedy, 952 F.2d at 267. "The 'sham affidavit' rule does not preclude the non-moving party "'from elaborating upon, explaining or clarifying prior testimony elicited by opposing counsel on deposition.'" Nelson v. City of Davis, --- F.3d ---, 2009 WL 1925909 (9th Cir. 2009). Moreover, "'minor inconsistencies that result from an honest discrepancy, a mistake, or newly discovered evidence afford no basis for excluding an opposition affidavit.'" Id.

(internal citations omitted); see also Sea-Land Serv., Inc. v. Lozen Int'l, LLC, 285 F.3d 808, 820 (9th Cir. 2002) ("[T]he statements in [the] declaration supplemented, and did not directly contradict [the] deposition statements. Accordingly, the district court erred in excluding the declaration on the ground that it contradicted [the] deposition testimony.").

The Court finds that Plaintiff's claim that he did not clench his fists is sham affidavit testimony. It is not an elaboration or explanation or clarification of his deposition testimony—it is a direct contradiction. Therefore, the Court will not consider it.

Thus, on Plaintiff's facts, the behavior he engaged in was a disagreement over wearing the shirt, cursing, stopping when ordered to do so, and clenching his fists. This is insufficient to show that Plaintiff presented a threat to Barber. Moreover, Plaintiff states that he did not strike at Barber or grab him. These facts would have permitted no use of force, or, at the most, very minimal use of force by Barber.

### *b.* *Smead and Mattas*

As to Smead and Mattas, it is undisputed that their involvement was later, albeit only moments later. Plaintiff does not assert that either Smead or Mattas pushed Plaintiff through the doorway and onto the ground or that they punched or kneed him. Plaintiff's allegations as to these Defendants are that Smead held Plaintiff's arm and Mattas tased Plaintiff four times.

Smead asserts that he saw Plaintiff take a swing at Barber, which Plaintiff denies. Mattas states that she heard Barber telling Plaintiff to stop resisting. Even assuming the truth of Plaintiff's statements, it was not unreasonable for Smead and Mattas to come to the scene of what had become, at the least, a disturbance and possibly a fight and to use force against Plaintiff to quell the situation.

### **3.** **Balancing the Force Used Against the Need for Force**

Balancing the application of force against the need for that force ultimately determines whether the force employed was reasonable. Drummond v. City of Anaheim, 343 F.3d 1052, 1058 (9th Cir. 2003). This determination is judged from the perspective of a reasonable officer on the scene. Graham, 490 U.S. at 396-97. "[P]olice officers are often forced to

make split-second judgments—in circumstances that are tense, uncertain, and rapidly evolving—about the amount of force that is necessary in a particular situation." Id. Even where some force is justified, the amount actually used can still be excessive. Santos v. Gates, 287 F.3d 846, 853 (9th Cir. 2002).

### *a.* **Barber**

On this record, and viewing the facts in the light most favorable to Plaintiff, the amount of force used against Plaintiff by Barber does not appear justified. If Plaintiff had, as he alleges, only cursed about the shirt and stopped in the doorway as Barber ordered and Barber then shoved and kneed him and if Plaintiff made no attempts to strike at or grab Barber when Plaintiff went down on the floor, there was no need for force by Barber.

Summary judgment is only appropriate if, after resolving all factual disputes in Plaintiff's favor, the Court concludes that the officer's use of force was objectively reasonable. See Scott v. Henrich, 39 F.3d 912, 914 (9th Cir. 1994). In this case, the Court cannot reach such a conclusion. The parties dispute the material facts, and in its summary judgment analysis, the Court may not make credibility determinations or weigh the conflicting evidence. Soremekun v. Thrifty Payless, Inc., 509 F.3d 978, 984 (9th Cir. 2007). Defendants' assertions regarding Plaintiff's memory of events—"there is a lot [he] can't remember about that nite" and his drug and alcohol use—are new matters raised for the first time in the reply; the Court will not consider them. See Provenz v. Miller, 102 F.3d 1478, 1483 (9th Cir. 1996) (citing Black v. TIC Inv. Corp., 900 F.2d 112, 116 (7th Cir. 1990)). Moreover, these allegations go to Plaintiff's credibility, which cannot be resolved on summary judgment. See Ott v. City of Champlin, 80 F. 3d 254, 256 (8th Cir. 1996) (plaintiff's admission that she was between sober and drunk was relevant to issues of credibility that could not be resolved on summary judgment). The Fourth Amendment reasonableness test is inherently fact-specific and is therefore ordinarily a question of fact for a jury. See Liston, 120 F.3d at 976 n. 10; Chew v. Gates, 27 F.3d 1432, 1443 (9th Cir. 1994).

The Court will deny summary judgment to Barber.

///

### *b.* *Smead*

It is undisputed that Smead did nothing more than hold Plaintiff's left arm and get him to the ground. The reasonableness of Smead's conduct is to be judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight. Graham, 490 U.S. at 396-97. Even if Smead was mistaken about Plaintiff being the aggressor, Smead was making a "split-second judgment" in a situation that was "tense, uncertain, and rapidly evolving." See id. And he used minimal force.

In addition, it was after Smead arrived that Plaintiff claims to have lost consciousness. Smead attests that he held Plaintiff's arm because Plaintiff was actively fighting. (Smead Aff. ¶13.) Although Plaintiff asserts that he did not continue to fight with the officers, the Court holds that Plaintiff cannot create a genuine issue of fact through his own testimony regarding matters that occurred when he claims to have been unconscious. See Wertish v. Krueger, 433 F.3d 1062, 1065 (8th Cir. 2006) (in an excessive force case, the court treated the officer's version of events as unrefuted where the plaintiff testified that he could not remember anything about the traffic stop after he opened the car door); Curley v. Village of Suffern, 268 F.3d 65, 72 (2d Cir. 2001) (granting summary judgment based on qualified immunity when the police testified to their own conduct and the plaintiff admitted that he "could not recall" the critical events); Wysong v. City of Heath, 260 Fed. Appx. 848, 856-57 (6th Cir. 2008) (unpublished) (plaintiff cannot testify that he was "unconscious" when the officers were arresting him and because he claims only that he does not remember what happened, he cannot establish a genuine issue of material fact). Failure to remember or to be aware of factual information, like having a "belief" in factual information, is insufficient to show a material factual dispute because Plaintiff cannot show personal knowledge. See Columbia Pictures Indus., Inc. v. Prof'l Real Estate Investors, Inc., 944 F. 2d 1525, 1529 (9th Cir. 1991); Taylor v. List, 880 F2d 1040, 1045 n. 3 (9th Cir. 1989).

Thus, there is no material dispute of fact as to Smead's conduct. On this record, the Court finds that Smead's use of force was objectively reasonable. See Scott, 39 F.3d at 914.

1  The Court will grant summary judgment to Smead.

   ### c.  *Mattas*

3  Mattas asserts that she successfully tased Plaintiff once.[5] Although Plaintiff asserts in is opposition that Mattas tased him four times, in his deposition he testified that it was only one time.  Specifically, Plaintiff was asked "that was the only place you were Tased, on your arm?" and he replied "Yes. On my arm."  (Doc. #98 at 3; Doc. #99, Ex. M, Pl. Dep. 52:22-23.)  Likewise, in his verified Second Amended Complaint, Plaintiff asserted that Mattas tased Plaintiff's left arm.  (Doc. #20 at 4.)

   In addition, Plaintiff claims that he lost consciousness "and when he came to, [he felt] heat and needle sharp pains where Sgt. Mattas had been continuously tasing him."  (Doc. #97, PSOF ¶¶ 17-18.)  As stated above, Plaintiff cannot create a dispute of fact by attesting to matters that he claims happened while he was unconscious.  Although Plaintiff cites to the Incident Reports of Barber, who wrote that Mattas arrived and tased Plaintiff in the leg, and Gonzalez, who wrote that he saw Mattas apply the taser to Plaintiff's leg, there is no evidence that Plaintiff was actually tased more than once.  The Court finds that Plaintiff's claim that he was tased four times is sham affidavit testimony.  As with the statement about the clenched fists, it is not an elaboration or explanation or clarification of Plaintiff's deposition testimony or verified Complaint—it is a contradiction.  Therefore, in analyzing the claim against Mattas, the Court will assume that she tased Plaintiff once.

   As with Smead, the reasonableness of Matas' conduct is to be judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight.  Graham, 490 U.S. at 396-97.  Even if she was mistaken about Plaintiff being the aggressor, Mattas made a "split-second judgment" in a situation that was "tense, uncertain, and rapidly evolving."  She applied a single taser that was set on drive stun.[6] In addition,

   ---

   [5] She attests that she tased Plaintiff in the leg and although she tried to tase him a second time, she was unable to do so.  (Mattas Aff. ¶¶ 9-11.)

   [6] Although Defendants assert in their reply that this does not require firing of probes or darts and although it might leave a red mark, but it would not burn or create a bleeding hole, they offer no evidence to support this.  Counsel's statements are not evidence.  See

Plaintiff's deposition testimony—that when he came to, Mattas was tasing him and saying, "Quit resisting. Quit resisting"—supports Mattas' claim that she believed Plaintiff was resisting the officers' attempts to control him. Finally, Plaintiff's medical records show he sustained a swollen nose and pain, superficial lacerations on his brow, and blurred vison and eye pain; the records do not show injury from the tasing. See White v. Roper, 901 F.2d 1501, 1507 (1990) (absence of injuries relevant when analyzing whether force used was excessive).

On this record, the Court finds that Mattas's use of force was objectively reasonable. See Scott, 39 F.3d at 914. The Court will grant summary judgment to Mattas.

### C. Qualified Immunity

Barber is the only remaining Defendant, and the Court will now consider his claim that he is entitled to qualified immunity. A defendant in a § 1983 action is entitled to qualified immunity from damages for civil liability if his or her conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known. Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982). The "qualified immunity inquiry" asks if the right allegedly violated was clearly established at the relevant time. Saucier v. Katz, 533 U.S. 194, 201-02 (2001). This inquiry "must be undertaken in light of the specific context of the case, not as a broad general proposition." Id. at 201. "The relevant, dispositive inquiry . . . is whether it would be clear to a reasonable officer that his conduct was unlawful *in the situation he confronted.*" Id. at 202 (emphasis added).

As discussed above, the Court has determined that, viewed in the light most favorable to Plaintiff, disputed facts create a triable issue of fact regarding whether Barber used excessive force against Plaintiff. For purposes of qualified immunity, Barber argues that he did nothing more than attempt to assert control over Plaintiff, who would not conform to Barber's orders and became confrontational and even threw a punch at Barber after Barber had pushed him to control him. He argues that it would not be clear to a reasonable officer acting under the circumstances that the force used was unreasonable or unlawful. (Doc. #92 at 6-7.)

---

Comer v. Schriro, 480 F. 3d 960, 988 (9th Cir. 2007).

A right is clearly established if its contours are "sufficiently clear that a reasonable official would understand that what he is doing violates that right." Kennedy v. City of Ridgefield, 439 F.3d 1055, 1065 (9th Cir. 2006) (quoting Hope v. Pelzer, 536 U.S. 730, 739 (2002)). It is not necessary that there be a prior case with the identical facts showing that a right is clearly established, it is enough that there is preexisting law that provides a defendant "fair warning" that his conduct was unlawful. Kennedy, 439 F.3d at 1065; see also Deorle, 272 F.3d at 1285-86 ("[a]lthough there is no prior case prohibiting the use of this specific type of force in precisely the circumstances here involved, that is insufficient to entitle [defendant] to qualified immunity"). Pretrial detainees have a right to be free from the use of excessive force to maintain security and order in the jail. Lolli, 351 F.3d at 415; Gibson, 290 F.3d at 1197. Any reasonable officer would know that it is unreasonable to push, knee, and strike a detainee who is cursing but not threatening or striking out at the officer.

Barber's argument on the qualified immunity is the same as his defense to the constitutional violation and therefore implicates the same genuine issues of material fact concerning whether Barber used excessive force and, therefore, whether he would reasonably know if his conduct was unlawful. See Martinez v. Stanford, 323 F. 3d 1178, 1183-85 (9th Cir. 2003). Qualified immunity will be denied.

**IT IS ORDERED:**

(1)  Defendants' Motion for Summary Judgment (Doc. #92) is **granted in part and denied in part** as follows:

    (a)  **granted** as to Smead and Mattas, and

    (b)  **denied** as to Barber.

(2)  Smead and Mattas are **dismissed**.

(3)  The remaining claim is Count I against Barber.

DATED this 6th day of August, 2009.

_____
Cindy K. Jorgenson
United States District Judge